UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| AMANDA EVANS, | Case No. 2:20-cv-01802-KJD-DJA |
| Plaintiff, | ORDER |
| v. | |
| THE STANDARD FIRE INSURANCE COMPANY d/b/a TRAVELERS, | |
| Defendant. | |

Presently before the Court is Defendant's Motion for Summary Judgment (#35). Plaintiff filed a response in opposition (#39) to which Defendant replied (#40).

I.      Factual and Procedural Background

Plaintiff Amanda Evans ("Evans") brought this suit against Defendant, The Standard Fire Insurance Company d/b/a Travelers ("Travelers") on August 18, 2020. (#1). Travelers issued an insurance policy to Evans which included coverage for the actions and liability of under-insured and uninsured motorists. Id. at 6. On August 18, 2017, Evans was driving her vehicle when another driver rear-ended her and she claimed injuries to her neck, back, and knee. (#35-4, at 45). After the accident, Evans notified Travelers of the incident. Id. Evans was awarded $15,000 from the tortfeasor's insurance company. Id. at 44. On September 8, 2017, Evans began seeing a physical therapist, Dr. Michael McKay. Id. at 51. She completed physical therapy on November 8, 2017, where she noted she was performing at her "prior level of function" and had a pain score of 3/10. Id. On March 22, 2018, Evans saw Dr. Yevgey Khavin, a neurosurgeon. Id. at 53. Dr. Khavkin's opinion was that "to a reasonable degree of medical probability… her symptoms as well as the need for treatment, both nonsurgical and surgical down the line, are directly causally related to the accident." Id. On May 15, 2018, Travelers disclosed the policy limit of $100,000

and asked for a detailed update regarding Evans' treatment status and prior medical records because it was aware of her pre-existing injuries. Id. at 22. Travelers claim specialist, Christopher George, and counsel for Evans communicated on numerous occasions about treatment status and medical documentation. Id. at 5–22. In February 2019, Travelers sent the medical records it had obtained to Nurse Julia T. Fricke for a review. Id. at 16. Nurse Fricke expressed skepticism about the amount of care required by Evans considering her previous injuries. Id. Travelers asked for numerous extensions so it could properly evaluate the claim. (#39-3, at 4). On April 12, 2019, Travelers extended an offer of $3,000 and a request for complete billing records from "Align Your Spine."  (#35-4, at 15). George followed up on his request for records multiple times. Id. at 12–15. George also invited counter-demands to the initial offer or $3,000. Id. at 10. George explained that Travelers had medical records from 2014 that established Evans had low back pain and that she was taking Flexeril and Tramadol since 2014. Id. at 9. Throughout the claim evaluation process, Evans consistently requested the full policy limit of $100,000. Id. at 7. On July 15, 2020, Travelers' wrote to Evans' counsel stating that all documentation it received was sent to Dr. Daniel Lee for a medical review and report. Id. at 4. Dr. Lee was behind schedule due to COVID-19, and on August 20, 2020, Dr. Lee completed his report. Id. The report established that in his medical opinion, "any treatment beyond 8 to 12 weeks after the subject motor vehicle accident is not related to the subject motor vehicle accident of August 17, 2017." Id. at 62. Dr. Lee also reported that "[c]learly, there is an expansion of subjective complaints that are not related to the subject motor vehicle accident… as these symptoms were not seen in the immediate and proximate time period after the subject motor vehicle accident…." Id. Evans has brought five causes of action against Travelers: breach of contract, violation of the Unfair Claims Practices Act, tortious breach of the covenant of good faith and fair dealing, bad faith, and negligent misrepresentation. (#1).

  II.  Legal Standard

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law. See FED. R. CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "Where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that 'issue is inappropriate for resolution on summary judgment.'" Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (quoting Direct Techs., LLC v. Elec. Arts, Inc., 836 F.3d 1059, 1067 (9th Cir. 2016)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

   III.   Analysis

   A. Breach of Contract

"An insurance policy is a contract." Senteney v. Fire Ins. Exch., 707 P.2d 1149 (Nev. 1985). "In Nevada, to succeed on a claim for breach of contract a plaintiff must show: (1) the existence of a valid contract; (2) that the plaintiff performed or was excused from performance; (3) that the defendant breached the terms of the contract; and (4) that the plaintiff was damaged as a result of the breach." Patel v. Am. Nat'l Prop. & Cas. Co., 367 F.Supp.3d 1186 (D. Nev. 2019); see Restatement (Second) of Contracts § 203 (2007). "Whether a party has breached a contract and whether the breach is material are questions of fact." Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 536 (9th Cir. 2011).

The insurance policy at issue guarantees the insurer pays the insured for compensatory damages caused by the accident. (#35-4, at 31). Evans claims that her injuries were a direct and

proximate cause of the accident and that she is entitled to the full policy limit of $100,000. (#35, at 16, #39, at 2). Travelers asserts that Evans failed to disclose her long history of low back pain to her medical providers, that her remaining pain after being treated for the accident was from previous injuries, and that Travelers had a duty to fully investigate Evans' claim and evaluate whether the full policy limit was justified. (#40, at 8). If Evans' lasting pain was pre-existing, then per the contract, she is not entitled to compensatory damages for those expenses.

There is no dispute regarding the existence of the contract. However, Evans indicated in her initial statement to Nurse Fricke that she was involved in another rear end collision and had back problems ever since. (#35-4, at 16). The nurse noted that a rear end collision like the one Evans experienced is most likely to injure the neck. Id. Evans saw a physical therapist and cited low back and knee pain. Id. The nurse also noted that "acute episodes of back pain typically resolve in a few weeks… [a]lmost half of those afflicted with low back pain will be free of discomfort within 1 week, and 90% will recover between 6 and 12 weeks. The claimant attended physical therapy through 11/8/17 which is within this 12-week time frame following the MA. The 11/8/17 physical therapy discharge summary indicates that the claimant notes that she is performing at her prior level of function." Id. Evans then sought "treatment from a chiropractor on 1/23/18" and "complains of neck, upper back, low back and left hip pain. With the claimant's history, [one] could question if this is a new exacerbation of her underlying condition. She goes on to receive treatment through 12/10/18 which appear excessive." Id. During a deposition of Frank McAllister, Evans' primary care physician since she was 15, he testified that Evans had "a long history of back pain" that predated the accident at issue. (#35-2, at 17). Further, Travelers made repeated requests to Evans to obtain complete medical records so it could have a full picture of her medical history, but Evans failed to supply them before asking for the full policy limit. (#35, at 7–10).

On the other hand, Dr. Yevgeniy Khavkin testified that "[g]iven the chronology of the events of the timing and onset of the symptoms, I believe to a reasonable degree of medical probability that her symptoms as well as the need for treatment, both nonsurgical and possibly surgical down the line, are directly causally related to the accident." (#35-2, at 33). Dr. Willis

- 4 -

1    Wu testified in a deposition that Evans came to him with her main complaint being lower back
2    pain that was caused by the rear end collision. Id. at 43.
3        Evans objects to any reference to Travelers' claims notes as inadmissible hearsay and
4    untrustworthy. (#39 at 9–11). Evans also argues that the claims notes relied upon by Travelers
5    for this motion are incomplete. Id. The Court finds these claims notes are admissible as they fall
6    under the business records exception. Fed. R. Evid. 803(6). This rule provides that business
7    records are admissible when two foundational facts are shown: "(1) the writing is made or
8    transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the
9    record is kept in the course of regularly conducted business activity." Heath v. Tristar Products,
10   Inc., No.2:17-cv-2869-GMN-BNW, 2021 WL 3082564 (D. Nev. July 21, 2021). Christopher
11   George, the claim specialist, testified that his claims notes, including the report by Nurse Fricke,
12   are true and correct excerpts, and that they are kept in the regular course of business. (#35-3, at
13   2). Evans has not pointed to any specific evidence indicating that these notes are not kept in the
14   regular course of business, nor has she presented any evidence to show they are untrustworthy.
15   Evans also fails to point to any rule or case requiring Travelers to present every page of every
16   document in support of its motion. Therefore, the claims notes are admissible.
17       Conflicting testimony exists about whether Evans' injuries resulted from her previous
18   accident or the rear end collision, which is a genuine issue of material fact. See Las Vegas Sands,
19   632 F.3d at 536. All ambiguities and reasonable inferences must be resolved in favor of the
20   nonmoving party and there is evidence to support both Evans and Travelers arguments.
21   Therefore, Travelers motion for summary judgment is denied on the breach of contract claim.
22   The issues that remain for trial are whether the accident caused the injuries Evans is being treated
23   for, and if so, the amount of damages she is entitled to.
24       **B.  Unfair Claims Practices Act**
25       Evans' complaint asserts that Travelers' violated Nevada's Unfair Claims Settlement Act
26   regarding the way Travelers processed her claim. The provisions of the Act "address the manner
27   in which an insurer handles an insured's claim whether or not the claim is denied." Schumacher
28   v. State Farm Fire & Cas. Co., 467 F.Supp.2d 1090, 1095 (D. Nev. 2006). Evans alleges that

Travelers breached five subsections of the Act. The Court will analyze each argument that corresponds with each subsection of the Act separately.

    1. Nev. Rev. Stat. Ann. § 686A.310(c)

Evans asserts that Travelers violated subsection (c) which makes "failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies" an unfair practice. Nev. Rev. Stat. Ann. § 686A.310(1)(c). Evans argues that "the history and timing of Defendant's implementation of the investigation was not prompt… the whole process undertaken by Defendant to evaluate the claim was a delay." (#39, at 13). Evans does not allege anywhere that Travelers failed to adopt or implement reasonable standards for a prompt investigation, only that there were repeated delays. Evans says that she presented her medical bills of $20,000 to Travelers on February 15, 2019, and that six days later the claim specialist, Christopher George, sent the medical records to Nurse Fricke for evaluation. (#39, at 13). Evans also states that George requested a week extension during the claim evaluation, and that it is evidence that Travelers acted unreasonably. Id. Evans also takes issue with Travelers' offer of $3000 made to Evans on April 12, 2019. Although there may have been some delays, Evans has failed to point to any evidence in the record that the delays were not in good faith. Travelers was waiting for Evans to provide her relevant medical history. There was also a COVID-19 delay, which was reasonable. The Court does not find this a violation of subsection (c) because there is no evidence for a reasonable jury to find that Travelers failed "to adopt and implement reasonable standards for the prompt investigation and processing of claims[.]"

George also stated in an affidavit that he was trained in claim handling and adjustments, in treating policyholders' interests with equal interest as the insurance company's interests, in assisting the policyholders, in being open and honest with the policyholders, and in disclosing all benefits, coverages, and time limits that may apply to the claim, as well as conducting a full, fair, and prompt investigation of all claims. (#35-3, at 2). George also took notes of the conversations with Evans and her counsel, and conversations with other Travelers personnel, which is done in the ordinary course of business. Id. Evans has not refuted this with any evidence indicating that

1    Travelers failed to adopt and implement reasonable standards that would facilitate a prompt
2    investigation and processing of claims. Therefore, the Court finds that no genuine issue of
3    material fact exists and summary judgment is granted to Travelers on Plaintiff's claim for
4    violation of § 686A.210(c). Accordingly, the Court dismisses Plaintiff's claim "failing to adopt
5    and implement reasonable standards for the prompt investigation and processing of claims
6    arising under insurance policies."

      2.   Nev. Rev. Stat. Ann. § 686A.310(d)

8    Evans alleges Travelers also violated subsection (d) which makes "failing to affirm or
9    deny coverage of claims within a reasonable time after proof of loss requirements have been
10   completed and submitted by the insured" an unfair practice. Nev. Rev. Stat. Ann. §
11   686A.310(1)(d). "An insured has a cause of action against an insurer [under § 310(d)] if the
12   insurer waits an inordinate amount of time before informing the insured that there is no
13   coverage." Turk v. Tig Ins. Co., 616 F.Supp.2d 1044, 1052 (D. Nev. 2009).

14   Evans made a demand to Travelers on February 15, 2019, and in her answer to
15   Interrogatory No. 19, she claimed that both her past medical and future care expenses amounted
16   to more than $115,000, which would entitle her to the policy limit of $100,000. (#35-2, at 8). She
17   asserts that Travelers failed to affirm this coverage within a reasonable time, and that it resulted
18   in a denial of payments for over three years. (#39, at 13). However, according to the record,
19   Travelers continually asked for information regarding Evans' injury and treatment status,
20   medical authorizations, and employment insurance information, and Evans continually failed to
21   supply that information, which resulted in the delay. (#35, at 6–10). Travelers owes a duty to
22   compensate Evans as per the contract, but it is also free to verify the claims Evans made
23   regarding her medical expenses. Travelers is not obligated to award the full policy limit simply
24   because Evans demanded it.

25   In Fries v. State Farm Mut. Auto. Ins. Co., No. 3:08-cv-00559-LRH-VPC, 2010 WL
26   653757, at *4 (D. Nev. Feb. 22, 2010) the plaintiff sued his insurance company arguing it
27   violated subsection (d). The court found that the insurance company did not wait an inordinate
28   amount of time to evaluate the claim, but that "State Farm maintained prompt communications

with Fries regarding her UIM claim while repeatedly requesting information necessary to fully evaluate her claim." Id. Just as in Fries, the Court does not find that Travelers waited an "inordinate amount of time" evaluating the claim; it was consistently requesting complete information from Evans and communicating with her counsel. Because Travelers was still verifying the basis of the medical expenses, it did not violate subsection (d) of the Act by failing "to affirm or deny coverage within a reasonable time after proof of loss" was submitted. Nev. Rev. Stat. Ann. § 686A.310(d). The Court finds that there was no violation, and thus, as a matter of law, Travelers is entitled to, and the Court grants summary judgment to Travelers on Plaintiff's claim for a violation of § 310(d).

3. Nev. Rev. Stat. Ann. § 686A.310(e)

Next, Evans argues that Travelers "fail[ed] to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear." Nev. Rev. Stat. Ann. § 686A.310(1)(e). Travelers had evidence throughout the claim evaluation process to support its position that Evans was not justified in receiving the full policy limit. It was not reasonably clear to Travelers that Evans was entitled to the full policy limit of $100,000 because of the incomplete medical history and the conflicting messages Evans provided to her doctors about her pain levels and required treatment.

Travelers also repeatedly solicited counter-demands from Evans, but she refused to engage in any negotiations and only requested the full policy limit. (#35-4, at 8). Travelers made an initial settlement offer of $3,000. Id. at 15. George asked Evans at least three times for a counter demand, but Evans insisted on $100,000 and then filed suit. Id. at 8–9, 12. The invitation by Travelers to negotiate an offer, as well as repeated attempts to obtain completed medical history, indicate that Travelers was attempting to effectuate prompt, fair, and equitable settlements of a claim, as well as attempting to determine the true nature and extent of her injuries, so that Travelers could pay her based on her actual damages. There is no genuine issue of material fact on this matter and the Court grants Travelers summary judgment on § 310(e).

4. Nev. Rev. Stat. Ann. § 686A.310(f)

Evans argues that Travelers violated the subsection that makes "[c]ompelling insureds to

institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insured have made claims for amounts reasonably similar to the amounts ultimately recovered" an unfair practice. Nev. Rev. Stat. Ann. § 686A.310(1)(f).

Summary judgment on this claim would be premature. Evans sued Travelers for an amount of money she believes she is entitled to. However, it is still unknown what Evans will ultimately recover in this action. Evans must first recover in this action before it can be determined whether Travelers offered substantially less than that recovery. See Carter v. Liberty Insurance Corp., No. 2:19-cv-01779-APG-BNW, 2022 WL 118833 at *4 (D. Nev. Jan. 12, 2022). Therefore, Travelers motion for summary judgment is denied with respect to the alleged violation of § 310(f).

5. Nev. Rev. Stat. Ann. § 686A.310(n)

Evans argues that Travelers violated the subsection that makes "[f]ailing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim" an "unfair practice. Nev. Rev. Stat. Ann. § 686A.310(1)(n). The record indicates that Travelers' communication with Evans was prompt and transparent. There were continuous requests for additional medical records and for counter-demands. When Evans' counsel asked for an explanation of the $3,000 offer, George responded by saying "each claim is evaluated on its own merit. We take into account a variety of factors in determining the value of our claims including, but not limited to: analysis of physical damage, mechanism of injury, medical billing and records, and my knowledge, skills, and experience as a claim professional." (#35-4, at 38). Evans contends that this explanation is unreasonable and unresponsive, but the Court is not convinced. After the many requests made by Travelers to obtain complete medical records, it should have been clear to Evans that Travelers could not accurately evaluate her claim in the way she wanted them to. There is no evidence in the record that supports the claim that Travelers violated this subsection, and thus summary judgment is granted to Defendant and against Plaintiff on her claim arising under § 310(n).

### C. Tortious Breach of Covenant of Good Faith and Fair Dealing

Evans claims that Travelers breached its implicit duty of good faith that existed in their insurance contract by "engaging in conduct that was contrary and unfaithful to the purposes of the contract." (#1, at 8–9). Evans also claimed that Travelers refused, without proper cause, to compensate her for a loss covered by the policy. Id. Travelers refutes this claim and argues it must be dismissed because Travelers never acted unreasonably or tortiously. (#35, at 20–21).

"Where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." Hilton Hotels v. Butch Lewis Productions, 808 P.2d 919, 922–23 (Nev. 1991). "Under Nevada law, breach of the implied covenant of good faith and fair dealing can give rise to a tort when a special relationship exists between the parties to the contract, such as a relationship between an insurer and an insured." Ruggieri v. Hartford Ins. Co. of the Midwest, No. 2:13-cv-00071-GMN-GWF, 2013 WL 2896967, at *4 (D. Nev. June 12, 2013). "An insurer breaches the duty of good faith when it refuses 'without proper cause to compensate its insured for a loss covered by the policy.'" Pioneer Chlor Alkali Co. v. Nat. Union Fire Ins., 863 F.Supp. 1237, 1242 (D. Nev. 1994). "To constitute a denial 'without proper cause' an insurer must have an 'actual or implied awareness of the absence of a reasonable basis for denying benefits of the policy.'" Am. Excess Ins. v. MGM Grand Hotels, 729 P.2d 1352, 1354 (Nev. 1986).

Travelers had a reasonable basis for denying Evans the full policy limit of $100,000. Given the information Travelers had at the time the demand was made, $3,000 was a fair representation of the value of her claim, although it was open to negotiate different amounts. (#35-4, at 8). The medical documentation Travelers received established that Evans had serious lower back pain that began in 2013. Id. at 60. Nurse Fricke and Dr. Lee both questioned the nature of her injuries and pain, so without more information to aid Travelers in its evaluation, it offered Evans $3,000. The medical professionals that were involved in the evaluation of Evans' claim at that time did not believe that $100,000 was necessary to cover the treatment that resulted from the rear end collision. (#35, at 22).

1    Evans argues that Travelers left out numerous emails and phone calls between the parties
2    that make Travelers look bad, but Evans has not presented specific admissible evidence
3    identifying those emails or phone calls or what was said in them. She "must do more than simply
4    show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at
5    587. The nonmoving party cannot avoid summary judgment by relying solely on conclusory
6    allegations unsupported by facts. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "A
7    party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A)
8    citing to particular parts of materials in the record … or other materials; or (B) showing that the
9    materials cited do not establish the absence or presence of a genuine dispute, or that an adverse
10   party cannot produce admissible evidence to support the fact." Rule 56(c).

Evans also argues that Travelers "is not entitled to unfettered access to the plaintiff's entire medical history." (#39, at 19). Evans relies on Schlatter v. Eighth Judicial Dist. Court, 561 P.2d 1342 (Nev. 1977) which held that a court exceeded its jurisdiction by ordering disclosure of information that was irrelevant to the case. Id. at 1343. However, that case also held that "[w]here… a litigant's physical condition is in issue, a court may order discovery of medical records containing information relevant to the injury complained of or any pre-existing injury related thereto." Id. Evans' physical condition is surely relevant, and thus, this argument fails. Overall, Travelers had proper cause to deny the full policy limit.

Evans has failed to produce specific facts by affidavit or other evidentiary materials that show there is a genuine issue for trial regarding the tortious breach of covenant of good faith and fair dealing, and therefore, Travelers is entitled to summary judgment on this claim.

**D. Bad Faith**

Evans alleges a separate claim of bad faith: that Travelers refused to compensate Evans for her covered loss, that it failed to do a proper investigation in a timely manner, and that the denial was done with reckless disregard. (#1, at 9). Travelers deny those allegations and assert that throughout the handling of the claim, it was attempting to get complete information about Evans' treatment and injuries so that it could accurately assess the claim. (#35, at 23–24).

"To establish a prima facie case of bad-faith refusal to pay an insurance claim, the

plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage." Goodrich v. Garrison Prop. & Cas. Ins. Co., 526 F.Supp.3d 789, 801 (D. Nev. 2021). "[T]he insurer is not liable for bad faith for being incorrect about policy coverage as long as the insurer had a reasonable basis to take the position that it did." Id. "Generally, a bad-faith claim is subject to summary judgment if the defendant demonstrates that there was a genuine dispute as to coverage, because if the insurer had a reasonable basis to deny coverage, the insurer is unlikely to know it was acting unreasonably." Id. "Where the undisputed evidence shows that the insurer had some reasonable basis for acting as it did, there is no bad faith." Igartua v. Mid-Century Ins. Co., 262 F.Supp.3d. 1050, 1054 (D. Nev. 2017).

As explained, Evans has failed to present evidence showing that Travelers acted in bad faith, and Travelers has demonstrated that there was a genuine dispute as to coverage. Therefore, summary judgment for the bad faith claim is granted in favor of Travelers.

### E.  Negligent Misrepresentation

Evans also asserts that Travelers failed to exercise reasonable care, that it lacked competence in obtaining information and communicating information to Evans, that Evans justifiably relied on that information and those representations, and that Evans suffered damages as a result. (#1, at 10). Travelers refute the assertion that it ever provided any false information to Evans and ask that this claim be dismissed. (#35, at 25).

"Nevada has adopted the Restatement (Second) of Torts definition of negligent misrepresentation. Under this theory of liability:

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance or others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

Skinner v. GEICO Cas. Ins. Co., 2018 WL 1075035, No. 2:16-cv-00078-APG-NJK, at *8 (D. Nev. Feb. 26, 2018).

Viewing the evidence in light most favorable to Evans, there is no genuine dispute for a

judge or jury to decide regarding any false information provided to Evans from Travelers. Evans points to a letter George wrote to a coworker that his "plan would be to reject the demand and indicate we cannot accept or reject the demand until we rule out other insurance with the employer." (#39-3, at 4–5). Evans claims this is evidence of "an intentional misrepresentation by Defendant that it was going to improperly deny the claim." (#39, at 21). However, George also emailed Evans' counsel stating that "at this time we are unable to accept or reject your settlement demand [of $100,000] as we require additional information to evaluate your claim." (#35-4, at 39). This was not a misrepresentation as it was true that Travelers needed more complete medical information from Evans. Evans has failed to bring forth evidence to satisfy her burden, and Travelers is entitled to summary judgment on the issue of negligent misrepresentation.

**F.  Punitive Damages**

Finally, Evans makes a claim for punitive damages based on oppression, malice, and intent to cause harm. (#1, at 11, #39, at 22). Travelers oppose that assertion and argue it acted reasonably throughout the entire process. (#35, at 26–28). "To recover punitive damages, plaintiff must also show evidence of 'oppression, fraud, or malice, express or implied.'" NRS 42.010; United Fire Ins. Co. v McClelland, 105 Nev. 504, 512 (Nev. 1989). Evans has not presented any evidence to establish that oppression, malice, or fraud occurred. As explained above, Travelers acted reasonably throughout the claim's evaluation process. Accordingly, summary judgment on this issue is granted.

    IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (ECF #35) is **GRANTED** in part and **DENIED** in part.

DATED this 23 day of September, 2022.

    Kent J. Dawson
    United States District Judge